STATE OF CONNECTICUT *v.* BRYANT K. ROLLINS
(SC 15718)

Callahan, C. J., and Borden, Norcott, Katz and McDonald, Js.

Argued March 18—officially released July 28, 1998

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Kevin Kane*, state's attorney, and *Stephen Carney*, assistant state's attorney, for the appellant (state).

*James B. Streeto*, for the appellee (defendant).

*Opinion*

MCDONALD, J. The issues in this certified appeal are whether the defendant, Bryant K. Rollins, invoked his right to counsel and whether his subsequent confession without counsel physically present was the result of interrogation initiated by the police in violation of his right to counsel. We conclude that the defendant invoked his right to counsel and that subsequently, through counsel, he initiated a permissible police interview that led to his confession.

It is undisputed that while incarcerated on an unrelated offense, the defendant was arrested and charged with multiple offenses.[1] On April 9, 1992, after the police gave the defendant *Miranda*[2] warnings, the defendant stated that he wished to speak with an attorney. The police made no attempt to interrogate the defendant at that time. The defendant and Nancy Radoff, a public defender appointed to represent him, met on April 15, 1992, at which time Radoff instructed him to remain silent until she had an opportunity to speak with the state's attorney. Thereafter, Radoff spoke with the state's attorney many times in an attempt to resolve the defendant's numerous pending cases. Radoff reported her discussions with the state's attorney to the defendant, after which the defendant decided to talk to the police. Radoff then told the state's attorney

---

[1] In twelve separate informations, the defendant was charged with ten counts of burglary in the third degree in violation of General Statutes § 53a-103, four counts each of larceny in the second degree in violation of General Statutes § 53a-123, and larceny in the third degree in violation of General Statutes § 53a-124, two counts of larceny in the sixth degree in violation of General Statutes § 53a-125b, and one count each of larceny in the first degree in violation of General Statutes § 53a-122, criminal mischief in the second degree in violation of General Statutes § 53a-116, criminal mischief in the third degree in violation of General Statutes § 53a-117, credit card theft in violation of General Statutes § 53a-128c, and attempt to commit larceny in the fifth degree in violation of General Statutes §§ 53a-48 and 53a-125a.

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that the police could question the defendant "about [the] burglaries." *State* v. *Rollins*, 44 Conn. App. 162, 163–64, 688 A.2d 876 (1997). Thereafter, on May 12, 1992, officer Mark Kalinowski of the Norwich police department went to the jail to interview the defendant. After signing a waiver of his rights, the defendant gave a statement implicating himself in one of the burglaries in connection with which he was charged.[3] Radoff was not physically present when the defendant signed the waiver and gave his statement on May 12. Id.

The defendant later filed a motion to suppress the May 12 statement. The trial court denied that motion. The defendant then entered a conditional plea of nolo contendere to one count of burglary in the third degree in violation of General Statutes § 53a-103.[4] The trial court rendered judgment in accordance with his plea and sentenced the defendant. *State* v. *Rollins*, supra, 44 Conn. App. 164.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming that the trial court should have granted the motion to suppress his May 12 statement[5] because it was taken in violation of the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[6] *State* v. *Rollins*, supra, 44 Conn. App.

---

[3] Although the defendant had made statements to the police concerning his involvement in some of the burglaries with which he was allegedly connected, this appeal concerns only the suppression of a statement made by the defendant to Kalinowski on May 12, 1992, confessing to his involvement in one of those burglaries.

[4] General Statutes § 53a-103 provides in relevant part: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[5] Because the Appellate Court's review of the trial court's denial of the motion to suppress was limited to the defendant's May 12 statement, our certified issue and decision in this case necessarily concern only the May 12 statement.

[6] The defendant did not brief the state constitutional issue and the Appellate Court therefore did not address it. *State* v. *Rollins*, supra, 44 Conn.

166–67. The Appellate Court concluded that the defendant had fully invoked his right to counsel, and that the defendant's subsequent statement was made during a police-initiated interrogation, in violation of his fifth amendment right to have counsel present. Id., 167–70. Accordingly, the Appellate Court ruled that the May 12 statement must be suppressed and ordered a new trial. Id., 170, 172. The state petitioned this court for certification, which we granted as to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the defendant's confession should have been suppressed by the trial court because (1) it was made after the defendant had requested counsel and (2) the subsequent communication that led to the confession was not initiated by the defendant as required by *Edwards* v. *Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), and its progeny?" *State* v. *Rollins*, 241 Conn. 921, 697 A.2d 361 (1997). We disagree with the reasoning of the Appellate Court and, accordingly, reverse its judgment.

I

Because "[i]nvocation and waiver are entirely distinct inquiries"; *Smith* v. *Illinois*, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984); we begin our analysis with the issue of the limited invocation of counsel. It is undisputed that on April 9, 1992, while in custody on other charges, the defendant was served with an arrest warrant. After being read his *Miranda* warnings, the defendant said that he wanted to speak with a lawyer. After a hearing on the motion to suppress, the trial court found that the defendant "did make requests for counsel." Nevertheless, the state argues that the defendant invoked only a limited right to counsel.

In *Davis* v. *United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the United States

App. 167 n.5. Accordingly, because there is no state constitutional claim raised before us, we address only the federal claim.

Supreme Court established the standard for determining when the accused has invoked his right to counsel. Id., 458–59. The court stated: "[T]he suspect must unambiguously request counsel." Id., 459. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. In *Davis*, the suspect said: "Maybe I should talk to a lawyer." (Internal quotation marks omitted.) Id., 455. Concluding that this statement was sufficiently ambiguous, the court held that continued police interrogation was appropriate. See id., 462. In *State* v. *Anonymous*, 240 Conn. 708, 694 A.2d 766 (1997), the defendant asked the police during custodial interrogation: "Do I still have a right to an attorney?" Id., 720. We held that the question was sufficiently ambiguous to permit continued police interrogation. Id., 724–25.

In this case, the defendant's statement that he wanted to speak with a lawyer was an unambiguous invocation of the right to counsel. When a person, after being advised of his or her *Miranda* rights, asks to speak with a lawyer, it is only reasonable to conclude that the person believes that, without counsel, he or she is not competent to continue any conversation with the police.

The defendant's words also set this case apart from *Connecticut* v. *Barrett*, 479 U.S. 523, 107 S. Ct. 828, 93 L. Ed. 2d 920 (1987). In *Barrett*, the defendant limited his invocation of his right to counsel by agreeing to speak with police but not agreeing to sign a written statement without a lawyer present. Id., 526. The United States Supreme Court concluded that the defendant had thereby waived his right to counsel for purposes of his oral confession. Id., 527–29. In the case before us, however, there was no ambiguous or limited request

for counsel because the ordinary understanding of the defendant's words indicated that he wished to deal with the police only through an attorney. See id., 529; see also *Patterson* v. *Illinois*, 487 U.S. 285, 291, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988).

## II

The defendant argues that *Minnick* v. *Mississippi*, 498 U.S. 146, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990), requires that counsel, once requested, must always be physically present when a defendant makes statements to the police. The Appellate Court held that, because Radoff was not physically present at the May 12 interview with Kalinowski, his statement should be suppressed as the interrogation was initiated by the police. *State* v. *Rollins*, supra, 44 Conn. App. 169. *Minnick*, as the Appellate Court observed, holds that the police "may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick* v. *Mississippi*, supra, 153.

The defendant conceded at oral argument that Radoff "was authorized by him to go to the police and tell them that he was willing to make a statement." Radoff's testimony supports this concession. She testified at the suppression hearing that the defendant wanted to make the statement, that he agreed to make it, and that she then told the state's attorney that the police could interview the defendant. It was not Radoff's practice to be present at a confession, and she did not forbid an interview with the defendant in her absence or request that she be present at the interview. Moreover, the defendant testified at the suppression hearing that he spoke with Radoff about whether to talk to the police before they interviewed him. The defendant testified, with respect to the May 12 meeting, that "[Radoff] made the indication that [the police] would probably be coming by shortly." The court then asked the defendant if, on May

12, "when Kalinowski called the jail to get [his] permission to come down and see [him], did [he] approve that?" The defendant said "yes." According to the defendant, the interview "was arranged beforehand" by Radoff. This arrangement, he testified, followed his discussion with Radoff, who suggested that he "would be facing a substantial amount of time if [he] did not confess." The defendant further testified that he gave Kalinowski permission to visit him in jail, and once the police arrived, he did not ask that Radoff be present at the interview.

Based on this evidence, the trial court found that Radoff "was aware . . . that the police were going to speak to [the defendant] . . . gave [the police] permission to speak to [the defendant] without her being there, and . . . advised [the defendant] that the police [would be coming] to speak to [him] and . . . told [him] to make whatever deal [he] could with the police."

As the United States Supreme Court pointed out in *Patterson* v. *Illinois*, supra, 487 U.S. 291, the essence of *Edwards* v. *Arizona*, supra, 451 U.S. 477, and its progeny, is "preserving the integrity of an accused's choice to communicate with police only through counsel. . . ." In this case, the evidence clearly shows that all communications with the police concerning the arrangements for the May 12 interview were made by the defendant only through his counsel. It was through counsel that the defendant told the police that he was prepared to waive his *Miranda* rights and submit to an interview. Although the defendant was not present when Radoff spoke to the state's attorney, there was ample evidence to support the trial court's finding that Radoff spoke as she did in furtherance of the defendant's desire to cooperate with and confess to the police.

The United States Supreme Court observed in *Edwards* v. *Arizona*, supra, 451 U.S. 477, that an

"accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication*, exchanges, or conversations with the police." (Emphasis added.) Id., 484–85. Furthermore, the court held in *Edwards* that a defendant's valid waiver of his or her right to counsel, once invoked, cannot be demonstrated "by showing only that he [or she] responded to further police-initiated custodial interrogation even if he [or she] has been advised of his [or her] rights." Id., 484. This rule is "designed to prevent police from badgering a defendant into waiving his [or her] previously asserted *Miranda* rights." *Michigan* v. *Harvey*, 494 U.S. 344, 350, 110 S. Ct. 1176, 108 L. Ed. 2d 293 (1990). Where the defendant initiates the later interview, however, the defendant waives his or her fifth amendment right to counsel, and the police may act consistently with his or her wishes. *Edwards* v. *Arizona*, supra, 484–85.

In *Minnick* v. *Mississippi*, supra, 498 U.S. 146, the defendant invoked his right to counsel and met with counsel several times, but the prison guards later told him that he would have to talk to other police officers and that he "could not refuse." (Internal quotation marks omitted.) Id., 149. He thereafter confessed without his counsel present. See id. The United States Supreme Court decided that *Edwards'* "bright-line rule," requiring counsel's presence during any interrogation occurring after the defendant's invocation of the right to counsel, was not terminated or suspended by the defendant's superseding consultation with counsel, and it suppressed the confession. Id., 152–53. The *Minnick* court also observed that "*Edwards* does not foreclose finding a waiver of fifth amendment protections after counsel has been requested, provided the accused has initiated the conversation or discussions with the

authorities"; id., 156; but that was not the case in *Minnick*.

In this case, in contrast to *Minnick*, following the defendant's request for counsel, the police dealt with him only through counsel, as he requested, and it was the defendant, through counsel, who arranged for the subsequent interview that resulted in the May 12 statement.

The Appellate Court concluded that the defendant did not initiate the May 12 interview, but "merely responded to the actions of the police. . . ." *State* v. *Rollins*, supra, 44 Conn. App. 170. There is, however, no evidence in the record, nor did the trial court find, that the police had any direct communications with the defendant once he requested counsel until after Radoff gave her permission on his behalf to the state's attorney for the police to interview him. The police in this case interviewed the defendant in response to his decision, communicated by Radoff to the state's attorney, to talk to the police. Any earlier request by police to interview the accused before the right to counsel is invoked does not render the interview "police-initiated." As the court in *Minnick* recognizes, it is the "reinitiation" of interrogation after counsel has been requested that is prohibited. *Minnick* v. *Mississippi*, supra, 498 U.S. 156. The United States Supreme Court has described "initiation" as simply meaning "to call for such a meeting" or to "call for [the police]." *Patterson* v. *Illinois*, supra, 487 U.S. 291. The evidence indicates that the defendant did call, through Radoff, for such a meeting.

The evidence, the trial court's findings and the defendant's concession at oral argument all make clear that the May 12 interview with police was arranged by Radoff under the defendant's direction and with his consent, and any reinitiation of interrogation occurred in the presence of counsel.

In this case, there are "both particular and systematic assurances that the coercive pressures of custody were not the inducing cause" of the defendant's statement. *Minnick* v. *Mississippi*, supra, 498 U.S. 155. Those assurances took the form of Radoff's exclusive role in dealing with the police on the defendant's behalf and at his direction. *Miranda* and its progeny envision that a suspect may waive, with the assistance of counsel, his or her right to remain silent and give a statement.

Neither the defendant's arrangement of the interview with police through Radoff, nor the defendant's waiver of his right to counsel at the interview, require that his statement be suppressed and society be deprived of its use.

Because we conclude that the defendant arranged the May 12 interview with police only through Radoff, his May 12 statement was admissible.

The judgment of the Appellate Court is reversed and the case is remanded to that court for consideration of the defendant's remaining claim.

In this opinion the other justices concurred.