STATE OF CONNECTICUT *v.* FLORA CANALES
(SC 17102)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued October 26, 2006—officially released March 13, 2007

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Paul J. Ferencek* and *Maureen Ornousky*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Flora Canales, directly appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a.[2] On appeal, the defendant claims that (1) the admission into evidence at trial of statements that she had made to police officers violated her constitutional right against self-incrimination because they

---

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[2] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . .

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony or murder under section 53a-54d."

were the product of an illegal arrest, or a custodial interrogation in violation of her *Miranda* rights,[3] and (2) her due process rights under the state and federal constitutions and her state constitutional right to a probable cause hearing, as required by article first, § 8, of the constitution of Connecticut, were violated when the judge who had issued search and arrest warrants against her failed to disqualify himself from presiding over her probable cause hearing. We reject these claims and affirm the judgment of the trial court.

The record reveals the following facts, which the jury reasonably could have found, and procedural history. On December 3, 2001, the defendant entered the offices of the job placement agency in Greenwich owned by Alicia Mota-Kirkel and shot Mota-Kirkel three times, killing her. Evidence gathered by the police that day led them to conclude that they had probable cause to believe that the defendant had committed the crime. Consequently, on the evening of the murder, police officers detained the defendant in the lobby of her apartment building for approximately three hours while they prepared search and arrest warrants against her. The warrants were presented to a judge of the Superior Court, *Comerford, J.*, and were issued by him on that date.[4] The police then arrested the defendant and transported her to the Greenwich police station.

The defendant later filed a motion requesting that Judge Comerford disqualify himself from the constitutionally mandated probable cause hearing because he had issued the arrest warrant. After hearing argument,

---

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ("[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed").

[4] Judge Comerford also issued an additional search warrant the next day, December 4, 2001.

Judge Comerford denied the motion, proceeded with the probable cause hearing, and subsequently found probable cause to believe that the defendant had committed murder. The defendant also filed a pretrial motion to suppress statements that she had made to the police officers in the lobby of her apartment building and in the police station, which the trial court denied by oral decision after a suppression hearing. The statements later were admitted into evidence at trial.

After the case was tried to the jury, the trial court rendered judgment of conviction in accordance with the verdict of guilty on the charge of murder and sentenced the defendant to fifty years imprisonment. This appeal followed.

I

## WHETHER THE LOBBY STATEMENTS WERE THE PRODUCT OF AN ILLEGAL ARREST

The defendant first challenges the admissibility of the statements she made in the lobby of her apartment building on the ground that they were the product of an illegal arrest. Specifically, she argues that she was seized by the police from the moment that she exited her apartment and that the police officers who seized her lacked probable cause to justify her arrest at that time. The state responds that this claim should not be reviewed because it was not distinctly raised at trial and the record fails to satisfy the requirements for review of unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state also argues that, even if the defendant had been under arrest when she made the statements in the lobby, her arrest was not illegal because the police possessed probable cause to arrest her at that time. We agree with the state that the defendant failed to preserve her claim that the statements she had made in the lobby were the product of an illegal arrest, and also conclude that the unpre-

served claim is unreviewable under the first prong of *Golding* because the record is inadequate.

The record reveals the following additional relevant facts and procedural history. On the evening of the murder, two Greenwich police officers and two Stamford police officers went to the apartment building where the defendant lived in order to detain her. Two officers waited at the end of the hallway into which the defendant's apartment door opened, while two other officers waited in the lobby of the building. When the defendant emerged from her apartment into the hallway, the officers at the end of the hallway began to move toward her, and followed her as she walked into the lobby. One of the officers informed the defendant that they were police officers and asked if she was Flora Canales. The defendant answered in the affirmative and then asked the officers, "Why are you bothering me, because I'm a suspect in the Alicia [Mota-Kirkel]?" At that time, the victim's name had not been released publicly.

After the defendant made this statement, the officers patted her down and detained her in the lobby of the building for approximately three hours while arrest and search warrants were being prepared. During that time, the defendant was not handcuffed and she moved freely about the lobby, occasionally speaking to the officers or to people coming in and out of the building. The police officers did not interrogate the defendant during this time. While detained in the lobby, however, the defendant made several statements to the officers. She spontaneously informed them that she knew that they were investigating a shooting, that they were searching for a gun, and that she was a suspect. At one point during this detention, the defendant looked in a flower planter, which caused the officers to look in the planter. In response to the officers' action, the defendant told the officers that she knew they were looking for a gun

and that they would not find it there. She stated: "[K]eep looking and I will tell you when you get hot." During her detention in the lobby, the defendant also informed the officers that she knew the victim and that the victim was her enemy.

The defendant filed a pretrial motion seeking to suppress, inter alia, the statements that she had made in the lobby. She argued that, when she made those statements, she was in police custody and had not received *Miranda* warnings and, therefore, the statements were not a voluntary, knowing and intelligent waiver of her fifth amendment right against self-incrimination. The motion claimed that "evidence of these oral declarations . . . should be suppressed since it was taken in violation of the defendant's rights under [a]rticle [f]irst, [§] 8, of the Connecticut . . . constitution, and under the fourth, fifth, sixth and fourteenth amendments to the United States [c]onstitution." Despite the general reference to the fourth amendment to the United States constitution, the motion to suppress failed to raise any specific claim based on that amendment, including a claim that the lobby statements were the product of an illegal arrest.

At the suppression hearing, the state presented witnesses whose testimony focused on the interactions between the defendant and the police officers and the circumstances under which she had made the statements at issue. The state did not present evidence concerning whether the police had evidence sufficient to establish probable cause for the defendant's arrest at the time of her detention in the lobby. Defense counsel also focused his cross-examination and argument on the circumstances surrounding the statements. He focused particularly on factors relevant to the *Miranda* claims, namely, whether the defendant was in custody, whether she had been informed of her *Miranda* rights, whether she had been interrogated, and whether the circum-

stances indicated that she had made a voluntary, know-
ing, and intelligent waiver of her rights.[5]

Similarly, both the oral argument made by the state
and the trial court's oral decision focused on whether
the defendant's *Miranda* rights had been violated.
Although the parties and the court indicated an interest
in whether the defendant was in police custody during
her detention in the lobby, neither the parties nor the
court focused on whether the information available to
the police when the defendant made the statements
constituted probable cause to support an arrest.

Our case law and rules of practice generally limit this
court's review to issues that are distinctly raised at trial.
See, e.g., *Ajadi* v. *Commissioner of Correction*, 280
Conn. 514, 550, 911 A.2d 712 (2006) (declining to con-
sider claim not raised before habeas court); *State* v.
*Fagan*, 280 Conn. 69, 85–89, 905 A.2d 1101 (2006)
(declining to review claim not preserved at trial); Prac-
tice Book § 60-5 (court not bound to consider claim
unless distinctly raised at trial). "Only in [the] most
exceptional circumstances can and will this court con-
sider a claim, constitutional or otherwise, that has not
been raised and decided in the trial court." (Internal
quotation marks omitted.) *River Bend Associates, Inc.*
v. *Conservation & Inland Wetlands Commission*, 269

---

[5] The sole reference to the legality of the defendant's arrest was made by
her attorney in the midst of oral argument concerning whether she was in
police custody for the purposes of *Miranda* when she made the second set
of lobby statements. In that context, the defendant's attorney stated: "Once
again, as I stated earlier, Your Honor, we have a lengthy detention, a period
of three hours where there is no search warrant, no arrest warrant. And,
therefore, what I believe was an illegal detention, that they had essentially
arrested my client without putting handcuffs on her because she was not
free to leave. In fact, she couldn't go into her own apartment. She had
therefore been arrested and improperly." In response, the trial court stated:
"You are quite right. This is clearly a custodial situation contrasted with
the first situation we talked about earlier today." The defendant's attorney
made the following reply: "Hurdle one. And now we get to interrogation,
I suppose."

Conn. 57, 82, 848 A.2d 395 (2004). Thus, because the defendant's motion to suppress failed to claim specifically that the statements she had made in the lobby were the product of an arrest for which the police lacked probable cause, and neither probable cause nor the legality of the arrest were the subject of any meaningful discussion at the suppression hearing; see footnote 5 of this opinion; we decline to review this issue unless it satisfies the requirements for review of unpreserved claims articulated in *State* v. *Golding*, supra, 213 Conn. 239–40.

"In *State* v. *Golding*, supra, 213 Conn. 239–40, this court set forth four conditions[6] that a defendant must satisfy before he may prevail, on appeal, on an unpreserved constitutional claim. Because a defendant cannot prevail under *Golding* unless he meets each of those four conditions, an appellate court is free to reject a defendant's unpreserved claim upon determining that any one of those conditions has not been satisfied. . . . Indeed, unless the defendant has satisfied the first *Golding* prong, that is, unless the defendant has demonstrated that the record is adequate for appellate review, the appellate tribunal will not consider the merits of the defendant's claim. . . .

"We note, moreover, that *Golding* is a narrow exception to the general rule that an appellate court will not entertain a claim that has not been raised in the trial court. The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised

---

[6] In *State* v. *Golding*, supra, 213 Conn. 239–40, this court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party. . . . Nevertheless, because constitutional claims implicate fundamental rights, it also would be unfair automatically and categorically to bar a defendant from raising a meritorious constitutional claim that warrants a new trial solely because the defendant failed to identify the violation at trial. *Golding* strikes an appropriate balance between these competing interests: the defendant may raise such a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 54–56, 901 A.2d 1 (2006). "It is well established . . . that parties must affirmatively seek to prevail under *State* v. *Golding*, [supra, 213 Conn. 239–40] . . . and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 781, 894 A.2d 963 (2006).

The state argues that the defendant's claim fails to satisfy the first prong of *Golding*, which requires that the record be adequate for review. Id. Specifically, the state claims that the record is inadequate because the trial court made no factual findings concerning probable cause. The defendant counters that, when the trial court made explicit findings concerning the defendant's

detention status for purposes of the *Miranda* claim, it implicitly found that the defendant's arrest was legal because, if the trial court had concluded that the arrest of the defendant was illegal, it would have said so. We agree with the state that the record is inadequate for review because the court was not provided with evidence upon which it could make a probable cause determination.

"In order for a warrantless felony arrest to be valid, it must be supported by probable cause. . . . The determination of whether probable cause exists under the fourth amendment to the federal constitution, and under article first, § 7, of our state constitution, is made pursuant to a totality of circumstances test. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed." (Internal quotation marks omitted.) *State* v. *James*, 261 Conn. 395, 415, 802 A.2d 820 (2002).

In this case, because the defendant did not argue at the suppression hearing that the arrest lacked probable cause, the state did not offer evidence concerning probable cause, and the trial court was not called upon to determine whether probable cause to arrest existed when the defendant made the statements in the lobby. Thus, the record of the suppression hearing is devoid of evidence that would allow this court to examine whether the police had probable cause to arrest the defendant at that particular time. Accordingly, the defendant fails to satisfy the requirement of the first prong of *Golding* that the record be adequate to review the alleged claim of error. As a result, she cannot prevail on this unpreserved constitutional claim.

We disagree with the defendant's argument that the trial court's determination that she was in police cus-

tody for the purposes of *Miranda* satisfies the first prong of *Golding*. "Two conditions . . . give rise to the requirement of advice of rights under *Miranda*: (1) the suspect must be in the custody of law enforcement officials; and (2) the suspect must be subjected to interrogation." *State* v. *Medina*, 228 Conn. 281, 289, 636 A.2d 351 (1994); see also *State* v. *Kirby*, 280 Conn. 361, 393, 908 A.2d 506 (2006). Because the defendant argued that her *Miranda* rights had been violated, the trial court focused on the two conditions relevant to a *Miranda* claim, namely, custody and interrogation. The defendant did not ask the court to determine the legality of the arrest,[7] the state presented no evidence concerning its legality, and the trial court did not make any factual findings or explicit conclusions concerning the issue. In fact, any such findings or conclusions by the trial court, either explicit or implicit, concerning whether the police possessed probable cause to arrest the defendant at the time of the lobby statements would have been manifestly improper, given that no evidence was proffered at the hearing on which to base such determinations.

"This court recently has reiterated the fundamental point that [i]t is incumbent upon the [defendant] to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review. . . . Our role is not to guess at possibilities . . . but to review claims

[7] Even the one brief reference by the defendant's attorney as to the illegality of the arrest, when read in the context of the entire transcript, supports the conclusion that the parties and the court were focused on the two *Miranda* conditions of custody and interrogation, rather than the legality of the arrest. After the defendant's attorney asserted that the defendant had been subject to an illegal arrest, the trial court interrupted him to agree, stating that "[t]his is clearly a custodial situation . . . ." The defendant's attorney responded by stating: "Hurdle one. And now we get to interrogation, I suppose." See footnote 5 of this opinion. As this exchange makes clear, both the trial court and defense counsel were focused on whether the defendant was in custody and had been interrogated, for *Miranda* purposes, rather than on the legality of that custody.

based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Brunetti*, supra, 279 Conn. 63. The defendant's failure to raise this issue at trial has resulted in a record that is wholly inadequate to allow this court to review this issue on appeal. Accordingly, we cannot review the defendant's unpreserved constitutional claim that the lobby statements were the product of an illegal arrest and, therefore, were admitted improperly into evidence at trial.

## II

## WHETHER STATEMENTS MADE IN THE LOBBY AND AT THE POLICE STATION WERE OBTAINED IN VIOLATION OF THE DEFENDANT'S *MIRANDA* RIGHTS

### A

### Whether the Lobby Statements Were the Product of Custodial Interrogation

The defendant next argues that the statements that she made in the lobby of her apartment building were not properly admissible at trial because they were made in response to custodial interrogation and without the benefit of *Miranda* warnings. The state contends that the trial court properly concluded that the statements were voluntary and were not the result of police interrogation. We agree with the state.

The facts and procedural history relevant to this claim are set forth in part I of this opinion. "The defendant bears the burden of proving that he was in custody for *Miranda* purposes. . . . Two discrete inquiries are essential to determine custody: first, what were the circumstances surrounding the interrogation; and sec-

ond, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry is factual, and we will not overturn the trial court's determination of the historical circumstances surrounding the defendant's interrogation unless it is clearly erroneous. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo." (Internal quotation marks omitted.) *State* v. *Kirby,* supra, 280 Conn. 393–94.

As we discussed previously, *Miranda* warnings are required when a suspect is in police custody and subject to interrogation. Id., 393; *State* v. *Medina,* supra, 228 Conn. 289. "[T]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Internal quotation marks omitted.) *State* v. *Kirby,* supra, 280 Conn. 398, quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 300–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). We conclude that we need not consider whether the defendant was in police custody when she made the lobby statements because the trial court properly determined that she had not been subject to interrogation.

The parties do not dispute that the defendant had not received *Miranda* warnings when she made the statements in the lobby of her apartment building. After hearing the evidence and argument presented at the suppression hearing, the trial court concluded, on the basis of that evidence, that the officers had not engaged in any action intended to interrogate the defendant or to elicit a response from her.

Testimony at the suppression hearing indicated that the police officers had identified themselves to the defendant and had inquired about her identity when they initially approached her in the lobby. Testimony also established that, while the defendant was present in the lobby, the police officers did not ask her any questions and at least one officer even discouraged her from speaking to him. We conclude that the trial court properly determined, on the basis of this evidence, that the defendant had not been subject to interrogation for the purposes of *Miranda*.

The defendant argues that this court should consider evidence that was not presented to the trial court during the suppression hearing, namely, the arrest warrant affidavit,[8] and conclude that the trial court's finding was clearly erroneous. We decline to do so. The defendant failed to introduce the arrest warrant at the suppression hearing in order to meet her burden of showing that she was subject to interrogation; *State* v. *Doehrer*, 200 Conn. 642, 647, 513 A.2d 58 (1986); and she has failed to offer any justification for that failure. Consideration of such evidence for the first time on appeal, without the benefit of effective state rebuttal or trial court determinations of credibility and fact, would usurp the trial court's role as the finder of fact.[9]

---

[8] The new evidence on which the defendant seeks to rely is a statement in the arrest warrant affidavit indicating that one of the officers had asked the defendant if she knew why the police were in her building and, when she replied that she knew she was a suspect in a murder in Greenwich, how she knew that. In response, the defendant stated that she had heard it on television and that she was in Greenwich at the time of the incident.

We note that the affidavit was prepared by Detective Edward Zack, who testified for the state at the suppression hearing concerning the statements made at the police station. Despite his apparent availability, the defendant did not seek evidence from Zack at the hearing concerning this affidavit.

[9] The defendant also argues that the defendant's second set of lobby statements was the product of a deliberately coercive attempt on the part of the police to elicit an incriminating response. Specifically, the defendant argues that the fact that the defendant was held for three hours in the lobby of her apartment building, in plain sight of her neighbors as they passed through the lobby, created a psychologically uncomfortable setting condu-

## B

## Whether the Police Station Statements Were Made without a Voluntary Waiver of the Defendant's *Miranda* Rights

The defendant next claims that the police continued to interrogate her at the police station after she invoked her right to have an attorney present, and that she did not validly waive her constitutional right against self-incrimination. Consequently, the defendant argues, the statements made at the police station after she had invoked her right to an attorney were inadmissible at trial. The state avers that the questioning of the defendant ended once she invoked her right to counsel and that the defendant voluntarily initiated the subsequent discussion, thereby validly waiving her rights. We agree with the state.

The record reveals the following additional relevant facts. On the night of the murder, the police arrested the defendant and transported her to the Greenwich police station, where Detective Edward Zack, of the Greenwich police department, intended to interview her on videotape. Before Zack began the interview, he informed the defendant of her *Miranda* rights. In response, the defendant indicated that she wished to have an attorney present. Zack then informed the defendant about the department's booking procedures. Next, the defendant asked Zack what evidence the police had that she had killed the victim, and whether they suspected her because the victim was her enemy and had caused the defendant to lose her last job. Zack responded by telling the defendant that the police had

cive to eliciting incriminating responses. Because the defendant did not make this argument before the trial court, the record is devoid of any evidence or factual findings with respect to the defendant's psychological comfort level. Accordingly, we decline to invade the trial court's fact-finding role by considering this claim.

interviewed several people and had developed probable cause to believe that she had killed the victim. The defendant then asked Zack whether "Rosemary" had told the police that the defendant had killed the victim. Zack asked who Rosemary was. The defendant did not answer that question and Zack did not question the defendant further.[10]

1

We first consider whether the interrogation of the defendant ended once she invoked her right to counsel. As previously discussed, "[t]he term interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vitale*, 197 Conn. 396, 411–12, 497 A.2d 956 (1985), quoting *Rhode Island* v. *Innis*, supra, 446 U.S. 301–302.

Indeed, even explicit questioning of the defendant may not constitute interrogation if the questions are " 'normally attendant to arrest and custody' " and are not reasonably likely to elicit an incriminating response. *State* v. *Kirby*, supra, 280 Conn. 398; see id., 398–400

---

[10] Although the defendant and Zack continued to interact briefly after this exchange, the state did not attempt to have any of the defendant's later statements admitted as evidence.

(questions concerning whether defendant understood rights did not constitute interrogation); *State* v. *Evans*, 203 Conn. 212, 225–27, 523 A.2d 1306 (1987) (no interrogation when routine booking questions were unrelated to crime and objectively neutral).

The trial court found that Zack immediately had ceased questioning the defendant once she invoked her right to counsel.[11] A review of the record, including both the testimony at trial and the videotaped interview, confirms the trial court's finding. After the defendant invoked her right to counsel, Zack responded by explaining the booking procedures to her, without further reference to the crime. This act is one that is normally attendant to arrest and custody and there is no indication in the record that Zack should have known that providing this information was likely to elicit any further response from the defendant. Accordingly, we conclude that the trial court properly determined that the interrogation of the defendant ceased as soon as she invoked her right to counsel.

Nonetheless, the defendant argues that, under the circumstances, Zack's explanation of the booking procedures constituted interrogation because he continued to videotape his interactions with her, did not indicate explicitly that the interview was over, and should have known, based on his contacts with her in the lobby of her apartment building, that she was likely to make spontaneous statements if he continued to interact with her. We disagree. Zack presented routine information to the defendant that was unrelated to the crime and

---

[11] In lieu of a separate written decision, the trial court's memorandum of decision on the motion to suppress refers the reader to those portions of the transcript containing its findings and legal conclusions. The memorandum of decision fails, however, to include a reference to the portion of the transcript in which the trial court resolves the challenge to the statements made at the police station. We assume that this failure was an oversight and rely on the relevant portions of the transcript for our analysis.

objectively neutral. "The test as to whether a particular question is likely to elicit an incriminating response is objective; the subjective intent of the police officer is relevant but not conclusive and the relationship of the questions asked to the crime committed is highly relevant." (Internal quotation marks omitted.) *State* v. *Evans*, supra, 203 Conn. 226. Although Zack may have known that the defendant had made spontaneous statements earlier that evening, it cannot reasonably be said that he should have known she was likely to respond to necessary and routine procedural information, presented in a neutral fashion, by making another such statement.

2

We next consider whether the trial court properly concluded that the defendant validly had waived her right to counsel when she made statements at the police station concerning her relationship with the victim. In considering whether a statement is voluntarily made, "[t]he test . . . is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . Furthermore, the scope of review is plenary on the ultimate question of voluntariness, but the trial court's findings regarding the circumstances surrounding the defendant's questioning and confession are findings of fact that will not be overturned unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *State* v. *Azukas*, 278 Conn. 267, 290, 897 A.2d 554 (2006).

"To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived [her] *Miranda* rights." (Internal quotation marks omitted.)

Id., 288. The state may not prove a valid waiver of the right to counsel "by showing only that [she] responded to further police-initiated custodial interrogation . . . ." (Internal quotation marks omitted.) *State* v. *Rollins*, 245 Conn. 700, 708, 714 A.2d 1217 (1998). "Where the defendant initiates the later interview, however, the defendant waives his or her fifth amendment right to counsel, and the police may act consistently with his or her wishes." Id. The initiation of conversation includes "inquiries that can be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." (Internal quotation marks omitted.) *State* v. *Hafford*, 252 Conn. 274, 291, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000), quoting *Oregon* v. *Bradshaw*, 462 U.S. 1039, 1045, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983).

Our review of the record indicates that the trial court properly determined that the defendant initiated the conversation with the police. The defendant made the statements, without prompting or encouragement from Zack, apparently out of the desire to know more about the evidence against her. Her questions appear to constitute exactly the type of "inquiries that can be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." (Internal quotation marks omitted.) *State* v. *Hafford*, supra, 252 Conn. 291. Moreover, the record is devoid of any indication that the defendant was coerced or even encouraged by the police to make the statements or to otherwise continue her interaction with them. We conclude that the trial court properly concluded that, when the defendant made the relevant statements, she voluntarily had initiated the conversation with the police and thereby validly waived her right to counsel.

## III

### WHETHER THE DEFENDANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE JUDGE WHO ISSUED THE ARREST AND SEARCH WARRANTS ALSO CONDUCTED THE PROBABLE CAUSE HEARING

Finally, the defendant claims that her due process rights under the federal and state constitutions and her state constitutional right to a probable cause hearing were violated when the judge who had issued the search and arrest warrants against her also conducted the constitutionally mandated hearing to determine whether there was probable cause to proceed to trial.[12] The state replies that the defendant's rights were not violated because no laws or rules of practice forbid a judge who issues a warrant from presiding over a subsequent probable cause hearing, and no actual bias or appearance of bias arises from such an action. We conclude that, although it is much preferred that a judge who issues a warrant should not preside over the probable cause hearing in the same matter, the failure to adhere to such a practice does not constitute a constitutional violation.

### A

### Whether the Defendant's Due Process Rights Were Violated When the Judge Who Issued the Search and Arrest Warrants Also Presided over the Probable Cause Hearing

We consider first the defendant's claim that her due process rights were violated when the same judge who

---

[12] Although the defendant invokes the due process clauses of both the state and federal constitutions, she does not provide an independent analysis of her state claim. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004). Accord-

had issued search and arrest warrants against her thereafter presided over the constitutionally mandated probable cause hearing. Canon 3 (c) (1) of the Code of Judicial Conduct[13] and Practice Book § 1-22 (a)[14] require disqualification whenever a judge's impartiality might reasonably be questioned. This court previously has made clear that "[t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Citation omitted; internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 527–28. Generally, "an inquiry into disqualification of a judge requires a sensitive evaluation of all the facts and circumstances in order to determine whether a failure to disqualify the judge was an abuse of sound judicial discretion." *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 823, 717 A.2d 1232 (1998), aff'd after remand, 257 Conn. 570, 778 A.2d 885 (2001).

The question in this case, however, is not whether the trial judge's failure to disqualify himself constituted

ingly, we consider the defendant's due process claim solely pursuant to the fourteenth amendment to the United States constitution, § 1, which provides in relevant part: "No [s]tate shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[13] Canon 3 (c) (1) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."

[14] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3 (c) of the Code of Judicial Conduct . . . ."

an abuse of discretion, but whether that failure resulted in a violation of the defendant's constitutional right to due process. The United States Supreme Court consistently has held that a judge's failure to disqualify himself or herself will implicate the due process clause only when the right to disqualification arises from *actual bias* on the part of that judge. In *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820–21, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986), the court explained that not "[a]ll questions of judicial qualification . . . involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion. . . . Moreover, the traditional common-law rule was that disqualification for bias or prejudice was not permitted. . . . The more recent trend has been towards the adoption of statutes that permit disqualification for bias or prejudice. . . . But that alone would not be sufficient basis for imposing a constitutional requirement under the [d]ue [p]rocess [c]lause. We held in *Patterson* v. *New York*, 432 U.S. 197, 201–202 [97 S. Ct. 2319, 53 L. Ed. 2d 281] (1977) . . . that it is normally within the power of the [s]tate to regulate procedures under which its laws are carried out . . . and its decision in this regard is not subject to proscription under the [d]ue [p]rocess [c]lause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (Citations omitted; internal quotation marks omitted.)

In *Bracy* v. *Gramley*, 520 U.S. 899, 904–905, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997), the United States Supreme Court reaffirmed the principle that the requirements of due process are less rigorous than those of the Code of Judicial Conduct, which mandates *both* impartiality and the appearance of impartiality. See footnote 13 of this opinion. In *Bracy*, the court reflected that "most questions concerning a judge's qualifications

to hear a case are not constitutional ones, because the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment establishes a constitutional floor, not a uniform standard. . . . Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar. . . . But the floor established by the [d]ue [p]rocess [c]lause clearly requires a fair trial in a fair tribunal . . . before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (Citations omitted; internal quotation marks omitted.) *Bracy* v. *Gramley*, supra, 904–905. As the court stated in *Aetna Life Ins. Co.* v. *Lavoie*, supra, 475 U.S. 821, "[c]ertainly only in the most extreme of cases would disqualification on [the basis of allegations of bias or prejudice] be constitutionally required . . . ." See also R. Flamm, Judicial Disqualification (1996) § 2.3.3, pp. 34–35 (due process clause generally interpreted to require only lack of actual bias, not lack of appearance of bias).

In the present case, the defendant fails to allege the actual judicial bias required to establish a constitutional due process violation. The defendant argues instead that Judge Comerford's decision to conduct the probable cause hearing after he had issued the arrest and search warrants gave rise to the appearance of bias. Specifically, the defendant argues that, because the judge was required to make a determination of probable cause for the purpose of issuing the warrants, his ability to consider objectively the question of probable cause for the purpose of the constitutionally mandated hearing might reasonably be questioned, giving rise to the appearance of bias against the defendant in that proceeding. Even if we were to agree that an appearance of bias arose from those circumstances, we would not conclude that the trial court's actions violated due process without some indication of actual bias. Because the defendant has failed to point to any evidence that

the judge actually was biased as a result of having issued the search and arrest warrants, we must reject her claim that her due process rights were violated.[15]

### B

### Whether the Judge's Failure to Disqualify Himself Violated the Defendant's Constitutional Right to a Probable Cause Hearing

The defendant also argues that her state constitutional right to a probable cause hearing was violated

---

[15] Our independent research reveals only two states in which the courts have considered directly whether a judge who issues a warrant should be disqualified from presiding over a subsequent probable cause hearing. In both cases, the courts rejected the proposition. See *State* v. *Gause*, 107 Ariz. 491, 493, 489 P.2d 830 (1971) ("[t]here is no presumption that by making a prior determination of probable cause to issue an arrest warrant, a magistrate cannot thereafter make an independent and unbiased determination of whether probable cause exists to bind a defendant over for trial"), vacated on other grounds, 409 U.S. 815, 93 S. Ct. 192, 34 L. Ed. 2d 71 (1972), overruled on other grounds by *State* v. *Charo*, 156 Ariz. 561, 754 P.2d 288 (1988); *Black* v. *State*, 21 P.3d 1047, 1057 (Okla. Crim. App.) ("the act of signing search and arrest warrants does not constitute the type of interest in a proceeding that would automatically prohibit the issuing judge from presiding at the subsequent preliminary hearing absent some evidence that his conduct is somehow intertwined in the issuance of the warrants as to compromise his impartiality"), cert. denied, 534 U.S. 1004, 122 S. Ct. 483, 151 L. Ed. 2d 396 (2001); see also *Hubbard* v. *State*, 919 So. 2d 1022, 1026–27 (Miss. App. 2005) (disqualification not required where judge who issued order to draft warrant for probation violation also presided over probation revocation hearing); R. Flamm, Judicial Disqualification (1996) § 13.7 (absent evidence of bias, judge not disqualified from subsequent proceedings by preliminary probable cause determination); accord *Liteky* v. *United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *Withrow* v. *Larkin*, 421 U.S. 35, 56, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Judges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it. Judges also preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence."). Similarly, this court has held that, although we have established a bright line rule that a judge may not preside over a

by the judge's failure to disqualify himself from the probable cause hearing after he had issued the search and arrest warrants against her.[16] "Article first, § 8, of the constitution of Connecticut was amended in 1982 to guarantee the right to a probable cause hearing to those charged with crimes punishable by death or life imprisonment. [T]his new provision guarantees that no one will be forced to stand trial for a serious crime unless a court has first made a finding of probable cause at an open hearing in which the accused is provided with a full panoply of adversarial rights."[17] (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 506, 903 A.2d 169 (2006). The procedures governing such probable cause hearings are set forth in General Statutes § 54-46a, and they include the right to counsel and the right to cross-examine witnesses.[18]

defendant's trial after having participated actively in plea negotiations, that rule is not of constitutional dimensions. *State* v. *D'Antonio*, 274 Conn. 658, 680–81, 877 A.2d 696 (2005).

[16] This court requires parties raising an independent state constitutional claim to present an analysis of that claim that uses "the following tools of analysis . . . to the extent applicable: (1) the textual approach . . . (2) holdings and dicta of this court . . . (3) federal precedent . . . (4) sister state decisions or sibling approach . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations." (Internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 624 n.4, 899 A.2d 1 (2006), quoting *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992). Although the defendant herein does not invoke expressly *Geisler* or its tools of analysis, we conclude that her presentation of her claim of a violation of her state constitutional right to a probable cause hearing is sufficiently clear and thorough as to constitute a functionally adequate *Geisler* analysis.

[17] Article first, § 8 (a), of the Connecticut constitution, as amended by articles seventeen and twenty-nine of the amendments, provides in relevant part: "No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing in accordance with procedures prescribed by law . . . ."

[18] General Statutes § 54-46a provides: "(a) No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily

598

The defendant argues that the constitutional mandate of a probable cause hearing for serious crimes represents an intent to provide such defendants with extra procedural safeguards, and that it is inconsistent with this constitutional intent to permit the judge who issued the arrest warrant to conduct the subsequent probable cause hearing. To support her argument, the defendant points to other laws and rules of practice indicating that, when certain previously decided issues arise for a second time in criminal proceedings, a different judge generally should preside. See, e.g., General Statutes § 54-33f (judge issuing search warrant may not hear motion to suppress); Practice Book § 41-17 (same); General Statutes § 51-183h (judge issuing arrest warrant may not preside at hearing attacking validity or sufficiency of warrant); General Statutes § 51-183c (trial

waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

judge may not preside at retrial after granting of new trial or reversal); Practice Book § 1-22 (trial judge may not preside at retrial and issuing judge may not hear motion attacking warrant).

We agree with the defendant that the statutes and rules of practice evince a preference for having a different judge reconsider previously decided questions, or questions similar to those previously decided. We also agree with the defendant that the determination of probable cause required for issuing warrants, although not identical, is sufficiently similar to the determination required for the constitutional probable cause hearing to justify the extension, by implication, of the preference that a different judge preside over the probable cause proceedings. Although the law does not mandate that a judge who has issued warrants decline to preside over the subsequent probable cause hearing, the policy reflected in the existing statutes and rules of practice is sufficiently clear to warrant a general practice of disqualification in such circumstances. Moreover, we agree that such a practice is much preferred and we strongly recommend to our trial judges that they disqualify themselves from conducting a probable cause hearing when they already have issued arrest or search warrants in the same case.

Nevertheless, we cannot conclude that disqualification is constitutionally required by the right to a probable cause hearing set forth in article first, § 8, of the constitution of Connecticut, when it is not specifically dictated by the implementing statute, § 54-46a. "[T]he legislature, pursuant to the constitutional mandate imposed upon it by [article first, § 8], established the procedures for the conduct of the hearing through the enactment of § 54-46a. Once in place, those procedures became constituent parts of the substantive rights created by the constitutional amendment. . . . The defendant, having been afforded a probable cause hearing

under the constitution and § 54-46a, which provide his only entitlement to such a hearing, can hardly be heard to complain of a lack of due process because the trial court refused to extend him a right to which he was not entitled under either." (Citations omitted.) *State* v. *Kane*, 218 Conn. 151, 158–59, 588 A.2d 179 (1991); id., 155–59 (statutory prohibition in § 54-46a on filing motions to suppress in probable cause proceedings not violation of due process). Similarly, the protections to which the defendant in the present case is entitled pursuant to her constitutional right to a probable cause hearing are limited by the terms of the constitutional amendment and its implementing statute. Having concluded that the disqualification of the judge in this case is not mandated by the constitutional right to due process, and is not required by the explicit terms of the constitutional right to a probable cause hearing, we find no compelling reason to find an implicit mandate to that effect arising from the contours of the state constitution.

The judgment is affirmed.

In this opinion the other justices concurred.