******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

IN RE VADA V. ET AL.*
(SC 20603)
(SC 20604)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The respondents appealed from the judgments of the trial court terminating their parental rights with respect to their minor children. After the children were adjudicated neglected and committed to the care and custody of the petitioner, the Commissioner of Children and Families, the petitioner sought to terminate the respondents' parental rights with respect to the children on the ground that the respondents had failed to rehabilitate. During the COVID-19 pandemic, a virtual trial on the termination petitions was held via Microsoft Teams. The respondents were represented by separate counsel and participated in the proceedings through audio and video means. The respondents joined the trial via a shared cell phone, outside the proximity of their counsel, but they were able to communicate with counsel through e-mail, text messages, and a messaging application. After the conclusion of the trial, the trial court terminated the respondents' parental rights. On appeal from the trial court's judgments, *held*:

1. The respondents' unpreserved claims that the trial court had violated their rights under article first, § 10, and article fifth, § 1, of the Connecticut constitution by conducting the termination of parental rights trial virtually rather than in person, and that they had been denied their rights under the due process clause of the fourteenth amendment to physically confront the witnesses against them at the virtual trial were unavailing; this court, having addressed the same issues and underlying arguments in the companion case of *In re Annessa J.* (343 Conn. 642), adopted the reasoning and conclusions set forth in that decision, concluded, with respect to the respondents' claims under the state constitution, that the respondents failed to establish that there is a fundamental right to an in person termination of parental rights trial, and concluded, with respect to the respondents' due process claims, that, even if there is a right to in person confrontation under these circumstances, there was no factual record or factual findings on which this court could rely in order to determine whether that right was violated or whether the trial court correctly concluded that the state's interests were sufficiently great to warrant a virtual trial.

2. The record was inadequate to review the respondents' unpreserved claims, which they asserted either under the federal constitution or both the federal and state constitutions, that the state did not provide them with adequate devices and internet connection to participate both visually and by audio in the termination proceeding: the record was silent on, and, in some cases, undermined, the factual predicates necessary to evaluate the respondents' claims, as counsel for the respondent mother stated, during the trial, that the mother had more than one device, which contradicted the respondents' claim that they were forced to share the same device, the record indicated that the trial court took numerous steps to ensure that the respondents could meaningfully participate and communicate with their counsel throughout the trial, the record was largely silent as to the manner in which the respondents participated throughout the trial, including whether the respondents participated via audio or video or both at any given time, the record was devoid of any indication that the respondents' cell phone did not allow them to view the trial, and there was no indication that the respondents asked for technical assistance or accommodations from the trial court; nevertheless, this court emphasized the importance of ensuring equal access to justice in the context of virtual hearings and trials and observed that those public policy considerations were identical to those that this court expressed in the companion case of *In re Aisjaha N.* (343 Conn. 709).

Argued November 18, 2021—officially released June 20, 2022**

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of New Haven, Juvenile Matters, and tried to the court, *Marcus, J.*; judgments terminating the respondents' parental rights, from which the respondents filed separate appeals. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant in Docket No. SC 20603 (respondent father).

*David E. Schneider*, *Jr.*, assigned counsel, for the appellant in Docket No. SC 20604 (respondent mother).

*Seon Bagot*, assistant attorney general, with whom were *Evan O'Roark*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellee in both appeals (petitioner).

*Opinion*

McDONALD, J. These appeals are companion cases to *In re Annessa J.*, 343 Conn. 642,    A.3d    (2022), and *In re Aisjaha N.*, 343 Conn. 709,    A.3d    (2022), which we also decide today. The respondents, Sebastian V. and Samantha C., appeal from the judgments of the trial court, which terminated their parental rights pursuant to General Statutes § 17a-112 (j). On appeal, the respondents raise three unpreserved constitutional claims relating to the virtual nature of the termination of parental rights trial. Specifically, the respondents contend that the trial court violated their rights under article first, § 10, and article fifth, § 1, of the Connecticut constitution by conducting the termination of parental rights trial virtually, via Microsoft Teams,[1] rather than in person. They also contend that they were denied the right to physically confront the witnesses against them at the virtual trial, in violation of the due process clause of the fourteenth amendment to the United States constitution. Finally, the respondents contend that their constitutional rights were violated when the state required them to participate in the virtual trial without providing them with an electronic device and internet connection that allowed them to appear before the trial court in the same manner as if they were in a courtroom. We affirm the judgments of the trial court.

The record reveals the following relevant facts and procedural history. The Department of Children and Families first became involved with the respondents at the time of the birth of their daughter, Vada V., in August, 2017. The department received numerous referrals alleging that Samantha was abusing Xanax, opiates, and marijuana during her pregnancy, and that Sebastian was selling his prescribed medications of Xanax and Adderall. Shortly after being discharged from the hospital following her birth, Vada was readmitted to the hospital for suspected methadone toxicity while in the care of the respondents. On September 6, 2017, the petitioner, the Commissioner of Children and Families, filed a motion for an order of temporary custody and a neglect petition with respect to Vada. On September 22, 2017, the order of temporary custody was sustained by agreement of the respondents, and Vada was placed with her paternal aunt. On December 22, 2017, Vada was adjudicated neglected and committed to the care and custody of the petitioner. Due to the respondents' continued mental health issues and drug abuse, Vada was not reunified with them.

Thereafter, in December, 2018, the respondents' son, Sebastian V., Jr., was born. Both Samantha and Sebastian, Jr., tested positive for methadone and benzodiazepines. The petitioner filed a motion for an order of temporary custody and a neglect petition with respect to Sebastian, Jr., as the same issues that existed at the outset of the case regarding Vada continued to exist.

On January 11, 2019, the order of temporary custody was sustained by agreement of the respondents, and Sebastian, Jr., was ultimately placed with Samantha's stepsister. Sebastian, Jr., was subsequently adjudicated neglected and committed to the care and custody of the petitioner on May 1, 2019. The trial court approved a permanency plan for both Vada and Sebastian, Jr., of termination of parental rights and adoption. On August 27, 2019, the petitioner filed petitions for termination of parental rights with respect to both Vada and Sebastian, Jr., on the ground that the respondents had failed to rehabilitate.[2]

In October and November, 2020, during the COVID-19 pandemic, a two day virtual trial was held, via Microsoft Teams, on the petitions for termination of the respondents' parental rights. The respondents were represented by separate counsel and participated in the proceedings through audio and video means.[3]

On the first day of the virtual trial, the respondents, who had a history of arriving late to their court proceedings, were not present at the time trial was scheduled to begin. Before trial commenced, Samantha and Sebastian's respective counsel confirmed that they had provided their clients with the link to the trial, informed them of the time at which the proceedings would begin, and ensured that their clients had the technology needed to participate. The trial court subsequently asked that Samantha's counsel confirm, for the second time, that Samantha "acknowledged that [the respondents] had the technology to participate by [phone]." Samantha's counsel responded: "Yes. We were going over how we would be able to communicate during the trial, and [Samantha] said she had multiple devices, so she would be able to be on video and . . . perhaps text me on another device."[4] The trial court then commenced the trial in the respondents' absence.

During the cross-examination of the petitioner's first witness, the respondents joined the trial via a shared cell phone, outside the proximity of their counsel. The cross-examination was paused, and the trial court offered to recess, so that the respondents' counsel could have the opportunity to confer with their clients. Both attorneys declined the court's offer, and the cross-examination continued.

Following the first witness' testimony, the trial court asked the respondents' counsel how they planned to confer with their clients during trial. The court indicated that it was "willing to proceed in . . . any way [the respondents' counsel] would like" to ensure that they had adequate contact with their clients. Samantha's counsel stated that she had been communicating with Samantha through text messages and e-mail during trial. Sebastian's counsel similarly indicated that Sebastian was communicating with him through a messaging application. The court then noted that, "if there's any-

thing that the court needs to do in order to help you effectuate that communication, let me know . . . and we'll do our best to accommodate." The court then stood in recess to allow the respondents' counsel to confer with their clients.

The petitioner's counsel presented the testimony of four additional witnesses on the first day of trial. The respondents' counsel cross-examined each of the witnesses, and, at the close of the examination of three of those witnesses, before each witness was released, the trial court asked the respondents' counsel whether they needed an opportunity to confer with their clients to determine whether they should ask additional questions of the witness. The respondents' counsel declined the court's offer to do so each time, and, on at least one occasion, Samantha's counsel explained that she had already been communicating with Samantha during the witness' examination. Moreover, at the close of the examination of the final witness, the court asked whether the respondents' counsel, after consulting with their clients, had any further questions for the witness.

On the second day of the virtual trial, the respondents timely appeared via video, although the trial court commented that their video was frozen. Presumably, the respondents then turned their video off, as the court inquired, "[d]id you want to have your video on? Because, at the moment, it is not—your camera is not on." Samantha responded that she turned the video off because "it was lagging a lot," and she thought that turning the video off would "help the connection . . . ." Samantha indicated that she could attempt to turn the video back on if the court wanted, to which the court responded: "No. Whatever way works best for you. We just want to make sure that you have full participation in the proceedings, that's all." Samantha responded that the audio only feature was the "clearest [the respondents could] hear [the court] at the moment" and that she "[could] try again." The court responded: "All right. That's fine." The court then proceeded with trial.

Both respondents testified at trial. At the start of her direct examination, Samantha participated by video, but, shortly after beginning to testify, her video froze. She then turned her video off, and the trial court indicated that it could hear her "much better." She proceeded to testify. At a later point during her testimony, however, the court paused the proceedings due to connectivity issues, and the respondents logged off of the virtual trial. Following a brief recess, the respondents "called in" and rejoined the proceedings. The court stated that the technical difficulties with the respondents' connection had been resolved, and the direct examination of Samantha continued. The record does not indicate whether Samantha testified via audio only for the duration of her testimony or, alternatively,

whether she was able to utilize video technology for any portion of the remainder of her testimony.

Sebastian appeared via video at the beginning of his testimony, although, initially, his image appeared upside down, and his speech was muffled. His testimony was also interrupted, shortly into his counsel's questioning, by connectivity issues. The remainder of Sebastian's testimony proceeded without significant technological difficulty. As with Samantha, however, the record does not indicate whether Sebastian continued to utilize video technology throughout his testimony, or whether he, at some point, switched to audio only.

In its memorandum of decision, the trial court, *Marcus, J.*, terminated the parental rights of the respondents as to both Vada and Sebastian, Jr. The trial court found that the department had made reasonable efforts to reunify the respondents with Vada and Sebastian, Jr., and that neither parent was able or willing to benefit from reunification efforts. The court found by clear and convincing evidence that Sebastian failed to rehabilitate because he failed to address his significant mental health and substance abuse disorders, and had not engaged in the services ordered and required for reunification. The trial court found by clear and convincing evidence that Samantha failed to rehabilitate, in part, because she had failed to commit to drug rehabilitation in a serious and sustained way. After making the seven findings required by § 17a-112 (k), the court found by clear and convincing evidence that termination of parental rights was in the children's best interests. These appeals followed.

On appeal to this court, the respondents raise three unpreserved constitutional claims, arguing that the trial court violated their constitutional rights by conducting their termination of parental rights trial via Microsoft Teams instead of holding it in person. First, the respondents contend that the trial court acted in derogation of its duty under article first, § 10, and article fifth, § 1, of the Connecticut constitution, which, they argue, combine to constitutionalize the right to an in person, civil, public trial of the kind that existed at common law. Second, the respondents argue that the trial court denied them the right to physically confront and cross-examine the witnesses against them at the virtual trial, thereby violating their right to due process guaranteed by the fourteenth amendment to the United States constitution. Finally, they assert various state and federal constitutional claims premised on the fact that the trial court did not provide the respondents, who were indigent persons, with their own exclusive devices and internet connection to participate both visually and by audio in the proceeding. Accordingly, the respondents ask this court to reverse the trial court's judgments terminating their parental rights.

The petitioner contends that the respondents' unpre-

served constitutional claims cannot satisfy the requirements set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Specifically, the petitioner contends that the respondents' first claim—that article first, § 10, and article fifth, § 1, of the state constitution combine to constitutionalize the right to an in person trial as it existed at common law—fails *Golding*'s second prong, as the state "constitution does not guarantee the right to a trial in the physical presence of the judicial authority." See *State* v. *Golding*, supra, 239. As to the respondents' remaining claims, the petitioner argues that the record is inadequate for review, and the claims therefore fail *Golding*'s first prong.[5] See id. We affirm the judgments of the trial court terminating the respondents' parental rights.

## I

We begin with the respondents' first two unpreserved constitutional claims, namely, their contentions that the trial court violated their rights under article first, § 10, and article fifth, § 1, of the Connecticut constitution and their right to physically confront the witnesses against them, in violation of the due process clause of the fourteenth amendment to the United States constitution. Those issues and the merits of the underlying arguments presented in these appeals are identical to those that we considered in part I of *In re Annessa J.*, which we also decide today. See *In re Annessa J.*, supra, 343 Conn. 653–64. We conclude that our examination of the same issues in *In re Annessa J.* thoroughly resolves the claims in the present appeals and that there is nothing in the present cases that would mandate a different result. In particular, with respect to the respondents' claim under the state constitution, we conclude that the respondents' claim fails under the second prong of *Golding* because they failed to establish that there exists a fundamental right under article first, § 10, and article fifth, § 1, of the Connecticut constitution to an in person termination of parental rights trial. See id., 656–61. With respect to the respondents' federal due process claim, we conclude that their claim fails under the first prong of *Golding* because, even if this court were to assume that there is a constitutional right to in person confrontation, there is no factual record or factual findings for this court to rely on to determine whether that right was violated or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually.[6] See id., 661–64. Namely, the record lacks many of the factual predicates to this claim. Accordingly, we adopt the reasoning and conclusions in part I of *In re Annessa J.* herein. See id., 653–64.

## II

The respondents' final claim on appeal raises various unpreserved state and federal constitutional arguments

premised on the fact that the state did not provide the respondents, who were indigent, with their own exclusive devices and internet connection to participate both visually and by audio in the proceeding. Specifically, Samantha claims that the trial court denied her due process of law, in violation of the fourteenth amendment to the United States constitution, when it failed to provide her with an adequate device and internet connection to participate in the trial. In addition to a federal due process challenge, Sebastian also asserts that this failure to provide adequate technology denied him equal protection of the law under the federal constitution and open access to the courts under the state constitution.

The respondents concede that they did not raise these claims before the trial court and, therefore, seek review under *State* v. *Golding*, supra, 213 Conn. 239–40. Pursuant to *Golding*, "a [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) Id.; see *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*). "The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *In re Azareon Y.*, 309 Conn. 626, 634–35, 72 A.3d 1074 (2013).

As we have explained, under *Golding*, an appellant "may raise . . . a constitutional claim on appeal, and the appellate tribunal will review it, but only if the trial court record is adequate for appellate review. The reason for this requirement demands no great elaboration: in the absence of a sufficient record, there is no way to know whether a violation of constitutional magnitude in fact has occurred. Thus, as we stated in *Golding*, we will not address an unpreserved constitutional claim [i]f the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred . . . . It is well established . . . that parties must affirmatively seek to prevail under . . . *Golding* . . . and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims." (Citations omitted; internal quotation marks omitted.) *State* v. *Canales*, 281 Conn. 572, 581, 916 A.2d 767 (2007). To assess the adequacy of the record, we must first determine whether the alleged constitutional violation requires any factual predicates. See, e.g., *In re Azareon Y.*, supra,

As factual predicates to their constitutional claims, the respondents allege that their shared device was inadequate because they were unable to appear before the trial court, to confer spontaneously with counsel, or to view the proceedings. We conclude that the record is inadequate to review the respondents' constitutional claims because the record is silent on, and in some cases undermines, those factual predicates. First, the record does not indicate that the respondents shared a device because they had access to only one device. Indeed, after assuring the court that Samantha had the technology needed to participate in the proceedings, Samantha's counsel explained that Samantha had "said she had *multiple devices* . . . ." (Emphasis added.) Samantha subsequently confirmed that she had internet connectivity and a cell phone.

Second, contrary to the respondents' assertions, the trial court took numerous steps to ensure that the respondents could meaningfully communicate with their counsel throughout trial. The trial court specifically asked the respondents' counsel how they planned to confer with their clients during trial and explained that it was "willing to proceed in . . . any way that [the respondents' counsel] would like" to ensure that they had adequate contact with their clients. Samantha's counsel explained to the court that she had gone "over how we would be able to communicate during the trial, and [Samantha] said she had multiple devices, so she would be able to be on video and . . . perhaps text me on another device." Samantha's counsel subsequently stated that she has "been texting [Samantha], and [Samantha has] been e-mailing, and, so, we are communicating . . . during the trial."[7] For his part, Sebastian's counsel similarly indicated that Sebastian was communicating with him through a messaging application.[8] The court then noted that, "if there's anything that the court needs to do in order to help you effectuate that communication, let me know . . . and we'll do our best to accommodate." Moreover, after the testimony of three of the petitioner's witnesses, before each witness was released, the court asked the respondents' counsel whether they needed an opportunity to confer with their clients to determine whether they should ask additional questions of the witness. The respondents' counsel declined the court's offer to do so each time. On at least one occasion, Samantha's counsel explained that she had already been communicating with Samantha during the witness' examination.

Third, other than a few instances in which the trial court noted that the respondents were appearing by video or audio only, the record is silent as to the manner in which the respondents participated throughout the trial. Indeed, as Sebastian conceded in his brief, the record is silent as to whether the respondents partici-

pated via audio or video on the morning of the first day of trial. The record indicates, however, that, following an afternoon recess, the court noted, "[the respondents] have joined us *by video*, which is great." (Emphasis added.) In addition, on the second day of trial, the court noted, at various points, that the respondents were visible via video. As a result, it is clear that the device the respondents were using to participate in the proceedings had video capabilities, and, contrary to the respondents' assertions, the record is devoid of any indication that the respondents' cell phone did not enable them to view the proceedings. Moreover, the record reflects that, when technical issues arose during trial, the court took corrective measures to ensure that it, the parties and counsel could meaningfully participate. See, e.g., *People ex rel. R.J.B.*, 482 P.3d 519, 525 (Colo. App. 2021) (noting importance of trial court's taking steps to remedy technological issues during virtual termination of parental rights trial), cert. denied, Colorado Supreme Court, Docket No. 21SC115 (March 15, 2021); *In re M.M.*, Docket No. 21A-JT-840, 2021 WL 4839067, *3 (Ind. App. October 18, 2021) (decision without published opinion, 176 N.E.3d 589) (explaining that trial court rectified any technological issues during virtual termination of parental rights hearing and respondent mother was able to meaningfully participate). At one point, when the respondents were experiencing technical difficulties, the court explained to the respondents, "[w]hatever way works best for you. We just want to make sure that you have full participation in the proceedings, that's all."

Finally, neither Samantha nor Sebastian asked for technical assistance or accommodations from the trial court. Because the respondents did not raise any issue with their technology at trial, the trial court was unable to assess any potential problems with their ability to participate via video and had no occasion to consider alternative means for them to participate via video, to provide them technology or internet access, or to continue the trial until it could be held in person. As this court repeatedly has observed, "[o]ur role is not to guess at possibilities . . . but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 63, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). Because the record is silent on or, in some instances, undermines many of the factual predicates necessary to evaluate the respondents' claims, we conclude that the record is inadequate to review those unpreserved claims.

We take this opportunity, however, to emphasize the importance of ensuring equal access to justice, which is

particularly significant in the context of virtual hearings and trials, given the digital divide. These public policy considerations are identical to those that we expressed in part II of *In re Aisjaha N.*, which we also decide today. See *In re Aisjaha N.*, supra, 343 Conn. 727–30. Accordingly, the public policy discussion in part II of *In re Aisjaha N.* applies with equal force to the present cases.

The judgments are affirmed.

In this opinion the other justices concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in these appeals are not disclosed. The records and papers of these cases shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 20, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Microsoft Teams is "collaborative meeting [computer software] with video, audio, and screen sharing features." Connecticut Judicial Branch, Connecticut Guide to Remote Hearings for Attorneys and Self-Represented Parties (November 23, 2021) p. 5, available at https://jud.ct.gov/HomePDFs/ConnecticutGuideRemoteHearings.pdf (last visited June 15, 2022).

[2] The trial court's thorough and well reasoned memorandum of decision contains a detailed account of the extensive history of the department's involvement with the respondents.

[3] For the purposes of these appeals, the parties stipulate that the respondents were sharing a cell phone to participate in the virtual termination of parental rights trial, outside the proximity of their respective counsel.

[4] Samantha subsequently confirmed that she had internet connectivity and a cell phone.

[5] Counsel for the minor children, Vada and Sebastian, Jr., adopted the petitioner's briefs and all of her legal arguments.

[6] Unlike the respondent parents in *In re Annessa J.*, the respondents in the present cases did not raise any objection to the virtual nature of the trial before the trial court.

[7] The trial court even asked Samantha's counsel: "So, going forward, you'll be able to communicate by text, and it's really almost the same as [Samantha] sitting there and writing you a note because you're getting that note in real time. Is that correct?" Samantha's counsel responded, "[t]hat is correct, Your Honor."

[8] As with Samantha's counsel, the trial court specifically asked Sebastian's counsel whether he would be able to communicate with Sebastian during the testimony of a witness, to which Sebastian's counsel responded, "[Sebastian] can send me messengers. I get something from messenger from him."